**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNA MUNOZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:24-cv-00269-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 14, 18) |

**I.**

**INTRODUCTION**

Plaintiff Dianna M. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the Administrative Law Judge ("ALJ") improperly rejected a medical opinion.

For the reasons set forth below, the Court will affirm the decision of the Commissioner.

## II.

## BACKGROUND

### A. Procedural History

On September 20, 2021, Plaintiff protectively filed a Title XVI application for supplemental security income, and a Title II application for a period of disability and disability insurance benefits. (ECF No. 11, Administrative Record ("AR"), 23.) In both applications, Plaintiff alleged disability beginning on August 16, 2020. (Id.) Plaintiff's applications were initially denied on April 21, 2022, and denied upon reconsideration on August 30, 2022. (Id.) On September 9, 2022, Plaintiff requested a hearing before an ALJ. (Id.) On April 17, 2023, Plaintiff, represented by counsel, appeared for a telephonic hearing in front of an ALJ where Plaintiff and vocation expert ("VE") Jeff Komar testified. (Id.) On June 28, 2023, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 23-39.) On December 29, 2023, the Appeals Council denied Plaintiff's request for review. (AR 6-8.)

### B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2020, the alleged onset date. (AR 26) The ALJ found that Plaintiff had the following severe impairments: obesity, lumbar degenerative disc disease, depression, anxiety, and posttraumatic stress disorder. (Id.) However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb stairs and ramps; she can occasionally climb ladders, ropes, and scaffolds; she can frequently balance, stoop, crouch, crawl, and kneel; she should avoid concentrated exposure to workplace hazards, such as unprotected heights and moving machinery; she is limited to understanding, remembering, and carrying out simple instructions; she can occasionally interact with the public; and she can adapt to occasional workplace changes. (AR 30.)

The ALJ then found that that Plaintiff was unable to perform any past relevant work, was 45 years old on the alleged onset date, and has at least a high school education. (AR 37.) The ALJ discussed that transferability of job skills was not material to the determination of disability because Plaintiff did not have past relevant work. (Id.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 37-38.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from August 16, 2020, through the date of the decision, June 28, 2023. (AR 38.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.) Thereafter, the parties filed their briefs on the matter.[1]

### III.
### LEGAL STANDARD

**A.   The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v.

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff and Defendant filed motions for summary judgment, which the Court construes as briefs in support of each party's position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these

1  Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the
2  sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

---

cases and regulations are applicable to the instant matter.

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not carry the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.  Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024) (quoting Ford, 950 F.3d at 1154). In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023) (quoting Lambert v.

1  Saul, 980 F.3d 1266, 1278 (9th Cir. 2020)).  The burden of showing that an error is not harmless
2  "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d
3  1104, 1111 (9th Cir. 2012) (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

The only argument advanced by Plaintiff for the Court's review is that the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ erred in discrediting the opinion of psychological consultative examiner, G. Seward, Psy.D.

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. §

1 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record, " where contradictory evidence is present. Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R.

§ 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

On March 10, 2022, Plaintiff attended a comprehensive mental status evaluation with G. Seward, Psy.D. (AR 713-17.) No medical records were provided for Dr. Seward's review. (AR 713.) On examination, Dr. Seward observed that Plaintiff appeared appropriately dressed with good grooming; was alert, cooperative, and presented in a friendly but dysphoric manner (cried throughout the evaluation); made good eye contact; and had normal motor activity and speech. (AR 713, 715.) Dr. Seward noted Plaintiff's intelligence, abstraction, calculation, insight, and thought process were intact and her concentration was fair. (Id.) However, Dr. Seward noted that Plaintiff's attention and memory were impaired. (AR 715.) Dr. Seward rendered a diagnostical impression of "[m]ajor depressive disorder, recurrent, unspecified." (AR 716.)

Dr. Seward opined Plaintiff was mildly limited in her ability to accept instructions from supervisors. (AR 717.) Dr. Seward further opined Plaintiff was moderately limited in her ability to understand, remember, and perform simple written and oral instructions; maintain regular attendance in the workplace; perform work activities on a consistent basis and without special or additional supervision; to complete a normal workday or workweek without interruptions; interact with coworkers and the public; and deal with the usual stresses encountered in competitive work environment. (AR 716-17.) Finally, Dr. Seward opined Plaintiff is markedly limited in her ability to understand, remember, and perform complex written and oral instructions. (AR 716.) Dr. Seward explained Plaintiff's limitations are due to functional deficits associated with Plaintiff's mood disorder. (AR 716-17.)

Given Dr. Seward's diagnosis and Plaintiff's self-reported past mental health involvement, Dr. Seward opined that it appeared that Plaintiff's current mental health condition "may not abate on its own within a one-year period." (AR 717.) Dr. Seward also opined that Plaintiff "may benefit from continuing counseling and continuing psychiatric medication to

address and manage current mental health symptoms." (Id.).

The ALJ found Dr. Seward's "one-time snapshot assessment of [Plaintiff's] functioning" unpersuasive because "it is inconsistent with the longitudinal evidence of record that reveals a paucity of treatment for mental health impairments, improvement with counseling and medication and essentially normal mental status examinations throughout [citations omitted]." (AR 36.)  Plaintiff argues that that the ALJ erred by discrediting Dr. Seward's opinion without proper consideration of the supportability and consistency of the opinion with the record.  (ECF No. 14 ("Mot.").)  Defendant opposes, arguing that the ALJ properly considered Dr. Grewal's opinion as it was neither sufficiently supported nor consistent with the medical record evidence. (ECF No. 18 ("Opp'n").)

As to consistency, Plaintiff argues that the ALJ's "reliance upon a purported 'paucity of treatment for mental health impairments' " is improper, given any failure to seek more psychiatric treatment is not a legitimate reason to reject Dr. Seward's opinion. (Mot. 12-13.) While the reference to a lack of records alone would have been an insufficient basis for discrediting Dr. Seward's opinion, the ALJ provided two other specific reasons—improvement with counseling and medication and essentially normal mental status examinations throughout Plaintiff's medical records—supported by citations to Plaintiff's mental health records, which were also summarized in detail elsewhere in the ALJ's decision. (AR 31-34; 36.)

Plaintiff also argues that the ALJ's reliance upon Plaintiff's purported improvement with counseling and medication and failure to consider mental treatment records that document persistent and continued psychiatric limitations constitutes reversable error.  (Id. at pp. 13-16.) The Court disagrees.  As to consistency of Dr. Sewald's evaluation with the longitudinal record as a whole, the ALJ pointed to specific evidence in the record that was suggestive of adequate mental functioning—which included normal mental status examinations and Plaintiff's self-reports—and improvement of symptoms with counseling and medication.

The ALJ first points to two emergency department intake notes from August 21, 2020 and October 9, 2021 where the psychiatric findings noted, respectively, "Affect normal, Judgment normal, Mood normal" and "Cooperative, appropriate mood & affect." (AR 36 (citing

9

1 AR 543, 701).)

2 The ALJ also points to Plaintiff's January 29, 2021 psychiatric evaluation at Mind 3 Springs Health, Inc. and May 14, 2021 mental status examination at the same facility. (AR 36 4 (citing AR 640; 651-56).) On January 29, 2021, Plaintiff reported she was in counseling, had 5 tried several medications and had recently started different medication but noted "she isn't 6 seeing a lot of change." (AR 652-53.) Plaintiff reported her mood was "depressed, anxious." 7 (AR 650.) The provider found Plaintiff was dressed and groomed appropriately; exhibited no 8 abnormal voluntary movement; behaved cooperatively and friendly but became tearful on and 9 off throughout; exhibited appropriate speech and affect; had a logical, coherent, and relevant 10 thought process; exhibited an intact memory; exhibited adequate attention and concentration, 11 was engaged, and remained focus; and had good insight and judgment. (Id.) The provider 12 recommended Plaintiff continue taking her medications and ordered Venlafaxine. (AR 656.) 13 However, the ALJ also cited a record containing notes for a March 31, 2021 visit which reflected 14 that Plaintiff "[r]eports some improvement at first with the venlafaxine," but self-reported she 15 thought it was wearing off. (AR 640.) Plaintiff also reported that her depression had "some 16 improvement" with the same medication. The provider planned to increase the Venlafaxine. 17 Then, in the May 14, 2021 mental status exam, Plaintiff reported that her mood was "a little 18 better." (Id.) The provider found Plaintiff was dressed and groomed appropriately; maintained 19 adequate eye contact; exhibited no abnormal voluntary movement; behaved cooperatively and 20 friendly; exhibited appropriate speech and affect; had a logical, coherent, and relevant thought 21 process; exhibited an intact memory; exhibited adequate attention and concentration, was 22 engaged, and remained focus; and had good insight and judgment. (Id.)

23 Additionally, the ALJ cites three behavioral health notes from United Health Centers. 24 (AR 36 (citing AR 892-95; 931; 1046-1050).) First, on July 20, 2022, Plaintiff was referred to 25 behavioral health for "severe anxiety and depressive symptoms." (AR 1047.) The provider noted 26 that Plaintiff had scored severe on the GAD-7 scale and PHQ-9 depression questionnaire. (Id.) 27 In the mental status exam, the provider found Plaintiff cooperative; had normal speech; was 28 oriented with memory intact; exhibited remote and recent memory; exhibited impaired insight;

1  judgment and thought processes were intact; and her mood and affect were anxious and sad.
2  (AR 1050.) Then, in a follow up on December 13, 2022, Plaintiff reported an increase in anxiety
3  and depression. (AR 931.)  In the mental status exam, the provider found Plaintiff exhibited the
4  same objective findings as those on July 20, 2022, including intact memory and judgment. (Id.)
5  Finally, the ALJ also describes and cites Plaintiff's February 7, 2023 follow up therapy session,
6  whereby the provider assessed "[s]light improved symptoms. Patient able to manage symptoms
7  and responding better to family problems and relationship in the home." (AR 34; 36 (citing AR
8  892-95).) In the mental status exam, the provider found Plaintiff exhibited the same findings as
9  those on July 20, 2022, including intact memory and judgment.

10  Plaintiff argues that the ALJ committed error by cherry-picking through the record and
11  solely focusing on the above findings that align with the ALJ's unpersuasive finding with regard
12  to the opinion of Dr. Seward while ignoring all other probative evidence. (Mot. 14-15.)  In
13  support, Plaintiff points to two mental health treatment records that document "persistent and
14  continued psychiatric limitations despite treatment with medication and counseling."  (Id.)
15  Plaintiff points to the two visits as instances where her examination documented adverse
16  conditions such as depression, anxiety, being prescribed multiple medications, scoring severe on
17  a PHQ-9 assessment, and describing Plaintiff's continued treatment with a counselor and
18  psychiatrist. (AR 495, 501-04.)

19  As an initial matter, the Court does not find the two records cited by Plaintiff from
20  January 2021—each within eleven days of one another—reflective of Plaintiff's longitudinal
21  medical record. Nor does the Court find two records so close in temporal scope evidence of
22  Plaintiff's purported persistent and continued limitations. Further, although the ALJ did not
23  specifically cite the two records pointed by Plaintiff while discrediting Dr. Seward's opinion, she
24  did cite records making substantially similar abnormal findings on January 29, 2021 from Mind
25  Springs Health, Inc. to illustrate the progression of improvement in Plaintiff's mental health with
26  counseling and medication. (AR 36 (citing AR 640).)  Thus, there is overlap between Plaintiff's
27  proffered citations to the record and those portions of the record that the ALJ relied upon in
28  support of her findings. Unlike Plaintiff, however, the ALJ also compares Plaintiff's January

2021 mental health examination reflecting abnormal findings with records into February 2023—nearly a year after Dr. Seward's March 2022 opinion—whereby the provider assessed "[s]light improved symptoms" and Plaintiff was "able to manage [her] symptoms." (AR 36 (citing AR 892-95).) In a similar vein, Plaintiff argues the ALJ erred by considering her improvement with counseling and medication because her symptoms wax and wane. (Mot. 13-14.) However, the January 2021 records noted by Plaintiff do not show waxing and waning symptoms. The ALJ's conclusion regarding inconsistency was supported by a range of mental health encounters showing improved and managed symptoms.

This Court is tasked with the limited issue of determining whether the "ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). Here, the ALJ provided sufficient evidence from the record to support her conclusion that Dr. Seward's findings regarding Plaintiff's mild to marked mental impairments are inconsistent with the longitudinal record showing improvement with counseling and medication and essentially normal mental status examinations throughout, including normal memory findings.

As to supportability, Plaintiff argues the ALJ failed to engage in any analysis of the supportability of Dr. Seward's opinion. (Mot. at 11.) The Court agrees. Dr. Seward, a one-time consultative examiner who was provided no medical records (AR 713), examined Plaintiff and noted his objective medical findings in his report. For example, Dr. Seward observed that Plaintiff's memory was impaired with the ability to recall one out of three words after a brief delay. (AR 36.) In his findings, Dr. Seward assessed that Plaintiff was moderately limited in her ability to understand, remember and perform simple written and oral instructions and markedly impaired in her ability to understand, remember and perform complex written and oral instructions. (Id.) Without articulating how or why the positive objective findings did not support Dr. Seward's opined limitations, the ALJ labeled Dr. Seward's opinion as unpersuasive. See 20 C.F.R. § 416.920c(b)(2) (the ALJ shall "explain how [she] considered the supportability and consistency factors for a source's medical opinions…") see also Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide *some* reasoning in order for us to meaningfully determine

whether the ALJ's conclusions were supported by substantial evidence.") (Emphasis added).

Defendant argues that an ALJ may properly find an opinion unpersuasive because it was not supported by the source's own examination. (Opp'n 18 (citing Kitchen v. Kijakazi, 82 F.4th 732, 740 (9th Cir. 2023).) The ALJ here, however, makes no mention that Dr. Seward's opinion is not supported by his own examination notes. Defendant therefore requests that the Court find that the ALJ inferentially concluded that Dr. Seward's own examination notes do not support the most limited parts of his opinion. (Opp'n 18.) The Court declines to identify reasons that could have been advanced by the ALJ for rejecting Dr. Seward's opinion but were not. No inherent contradictions between any particular findings from Dr. Seward's March 10, 2022 mental status examination and his assessed limitations are apparent to the Court, and, most importantly, the ALJ has not identified any. See Treichler, 775 F.3d at 1103 (9th Cir. 2014) (the court "cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."). Because the ALJ failed to adequately address how Dr. Seward's opinion lacked supportability, the ALJ's finding that Dr. Seward's opinion was not persuasive is not supported by substantial evidence.

However, even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

As previously stated, the ALJ found, in pertinent part, that Plaintiff is limited to understanding, remembering, and carrying out simple instructions; she can occasionally interact with the public; and she can adapt to occasional workplace changes. (AR 25.) Plaintiff argues the restrictions assessed by Dr. Seward "were not accommodated by the RFC which the ALJ adopted." (Mot 12.) However, Plaintiff—who bears the burden of proving the error is not harmless—proffers no specific showing that even finding Dr Seward's opinion fully persuasive would alter the RFC finding. Rather, the full extent of Plaintiff's argument is that:

13

> [t]he ALJ's error in this case is not harmless. An error is harmful when it has some consequence on the ultimate non-disability determination. Corso v. Kijakazi, No. 2:20-CV-1099 AC, 2022 WL 2193388, at *7 (E.D. Cal. June 17, 2022) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error is harmful when – as here – the statement of a physician that the ALJ has rejected, if properly considered, may have resulted in a more restrictive residual functional capacity assessment, and which may in turn have altered the finding of non-disability. Corso, 2022 WL 2193388, at *7. The ALJ's evaluation of the opinion evidence in this case did not comply with the applicable legal procedures, and remand is warranted because the error has prejudiced Plaintiff. Lucas v. Kijakazi, No. 20-15140, 2022 WL 486635 (9th Cir. Feb. 17, 2022) (The court will reverse and grant remand "if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard.").

(Mot. 16.)  Plaintiff fails to meet her burden of showing the ALJ's error is not harmless.

Nor does the Court independently find the ALJ's RFC determination was the result of harmful error. First, the Court notes that although the ALJ noted she found Dr. Seward's opinion unpersuasive, the ALJ still considered Dr. Seward's opinion, and expressly cited it as a reason to raise Paragraph B criteria from mild to moderate. Specifically, the ALJ noted Plaintiff's subjective testimony "suggested that she can maintain concentration, persistence, and pace" to complete particular tasks. (AR 30.) "Nevertheless, given [Plaintiff's] allegations of mood issues, *as well as the findings of Dr. Seward* [citation omitted], the [ALJ] finds moderate limitations [with regard to concentrating, persisting, or maintaining pace]." (Id. (Emphasis added).) Accordingly, by expressly considering Dr. Seward's purportedly unpersuasive opinion in creating the RFC, the ALJ contemplated and incorporated Dr. Seward's most limited findings.

Further, Defendant emphasizes that Dr. Seward opined Plaintiff was markedly limited in only one area: Plaintiff's ability to understand, remember, and perform *complex* written and oral instructions. (AR 716 (emphasis added).) Dr. Seward further opined that Plaintiff was only moderately limited in her ability to understand, remember, and perform simple written and oral instructions. (Id.) When determining Plaintiff's RFC, the ALJ found that Plaintiff is limited to understanding, remembering, and carrying out *simple* instructions. (AR 30 (emphasis added).) Thus, although the ALJ discounted Dr. Seward's overall opinion, the ALJ incorporated Dr. Seward's limitations in the RFC assessment. (See AR 30.) Accordingly, even if the ALJ had

14

fully credited Dr. Seward's opinion, the Court concludes that the ALJ would not reach a different disability determination.

Plaintiff has not demonstrated that the ALJ's RFC determination was the result of harmful error. By expressly giving weight to Dr. Seward's findings (AR 30) and incorporating the same findings in the RFC, the Court does not independently find the ALJ's discrediting of Dr. Seward's opinion is "[]consequential to the [ALJ's] ultimate nondisability determinations." Tommasetti, 533 F.3d at 1038; Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (noting that an ALJ's failure to properly evaluate the medical opinions may be harmless error when the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination."). Accordingly, the Court shall deny Plaintiff's challenge to the ALJ's weighing of Dr. Seward's medical opinion.

## V.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Dianna M. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __March 28, 2025__

STANLEY A. BOONE
United States Magistrate Judge

15